IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES SUGGS, ) | C.A. No. 4:04-21841-TLW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **WRITTEN OPINION AND ORDER** |
| PERMANENT GENERAL ASSURANCE ) | |
| CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

### **Introduction**

Plaintiff James Suggs ("Mr. Suggs") filed the instant legal action in state court on June 30, 2004, seeking unspecified damages resulting from Permanent General Assurance Corporation's ("Permanent") alleged bad faith in the processing of an insurance claim made by his wife against him. In particular, Mr. Suggs alleges the following causes of action against Permanent: (i) breach of contract; (ii) bad faith; (iii) unreasonable failure to pay a claim; and (iv) unfair claims practices. Thereafter, Permanent removed the instant action to federal court. This matter now comes before the undersigned upon the filing of defendant Permanent's motion for summary judgment. Mr. Suggs opposes the defendant's motion for summary judgment.

According to Permanent, summary judgment in its favor should be granted because: (i) Permanent has not acted in bad faith or breached the insurance contract; (ii) no excess judgment has been rendered against Mr. Suggs; and (iii) Mr. Suggs has failed to claim damages for which he may recover. Conversely, the plaintiff argues that:

1

> ...[he] can demonstrate bad faith or unreasonable action by the defendant in processing [his] claim where the defendant continued to deny his wife's claim with no reasonable basis.

(Plaintiff's Memo. p.3).

On June 14, 2005, a hearing was held before the undersigned relating to the defendant's motion for summary judgment. At that time, both parties to this action were given the opportunity to present their respective legal positions. The undersigned has carefully considered the briefs, pleadings, argument of counsel, and relevant case law. The defendant's motion for summary judgment is now ripe for disposition.

## **Facts**

At all times relevant hereto, Mr. Suggs was insured by an automobile insurance policy issued by defendant Permanent. According to the plaintiff, on November 29, 2001, the plaintiff's wife, Margaret Suggs ("Mrs. Suggs") was seriously injured when she was struck and knocked down by an automobile driven by him. According to the plaintiff, Mrs. Suggs' injuries were incurred while she was attempting to exit from the passenger door of his automobile. Specifically, the plaintiff alleges that while his wife was exiting the automobile driven by him, it accidently rolled forward, the open car door struck Mrs. Suggs, and she was knocked to the ground, causing her injuries. Consequently, Mrs. Suggs initiated a claim for her injuries with Permanent. Both Mr. and Mrs. Suggs stated that Mrs. Suggs' injuries had occurred as a result of an accident involving Mr. Suggs' automobile.[1]

---

[1] It is undisputed that Permanent would have no liability for Mrs. Suggs' injuries but for the involvement of the automobile driven by her husband.

In the course of its investigation of Mrs. Suggs' claim, Permanent obtained copies of her hospital and emergency medical services records. Significantly, Mrs. Suggs' medical records made no reference to her having been struck by an automobile driven by her husband which caused her injuries. Instead, the medical records indicated in multiple instances that Mrs. Suggs had been injured when she "tripped" and "fell" at her home. In particular, emergency physician records obtained from Marion County Medical Center indicate that Mrs. Suggs was "found at home lying supine on the floor" and that she had stated that she "tripped" and "fell." Dr. E. H. Heimberger further noted that:

> [Mrs. Suggs] is a 70 year old female well known to myself, patient of Dr. Mathi, who presented status post fall with complaint of pain in her right hip.

Similarly, Dr. H. Thourani noted that:

> [Mrs. Suggs] comes in complaining of fall and fracture...

The medical records had no entry, nor provided, any indication that Mrs. Suggs had been struck by an automobile driven by her husband.

As well, Permanent also obtained a recorded statement from Judy McMakin ("McMakin"), the plaintiff's neighbor. In her statement, Ms. McMakin indicated that he had seen Mrs. Suggs fall to the ground, but that she did not know how she fell. More particularly, Ms. McMakin stated as follows:

> Q. Did you see the door hit Mrs. Suggs?
>
> A. I saw her hit the ground
>
> Q. Do you know how she fell?
>
> A. Uh...No. I don't.

(McMakin Statement p. 6)

Moreover, in an affidavit filed with the Court, Tony Jamison ("Mr. Jamison"), the claims representative assigned to Mrs. Suggs' liability claim, indicated that he "did not believe that Mrs. Suggs received her injuries as the result of a motor vehicle accident." (Jamison Aff. ¶ 6). In reliance thereon, and based upon the evidence then existing, Permanent initially denied Mrs. Suggs' liability insurance claim.

Following the denial of her liability claim, Mrs. Suggs initiated a lawsuit in state court against her husband for the injuries she sustained. Ultimately, her claim was settled when Permanent agreed to tender its full policy limits to Mrs. Suggs in exchange for a release from liability in favor of Permanent after a lawsuit was filed. According to Jamison:

> [He] decided to settle the case based on the seriousness of the injuries, our cost of defense and our inability to locate a witness who would testify that the accident did not involve a vehicle.

(Jamison Aff. ¶ 7).

The instant lawsuit followed.

### Standard for Summary Judgment

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324, 91 L.Ed.2d at 274. That burden is not discharged by "mere allegations or denials." Fed.R.Civ.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L.Ed.2d 202, 216 (1986). Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 91 L.Ed.2d at 273. Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L.Ed.2d 538, 552 (1986).

### **Analysis**

Initially, the defendant asserts that summary judgment is appropriate in its favor on the plaintiff's claims of "bad faith" because a "reasonable basis" existed upon which the insurer could initially deny Mrs. Suggs' liability claim. Under South Carolina law, an insured may assert against his insurance company a cause of action for the breach of implied covenants of good faith and fair dealing. *See* Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336, 306 S.E.2d 616, 619 (1983). Likewise, "[T]here is an implied covenant of good faith and fair dealing in every insurance contract that neither party will do anything to impair the other's rights to receive benefits under the contract." Tadlock Painting Co. v. Maryland Cas. Co., 322 S.C. 498, 473 S.E.2d 52, 53 (1996).

Importantly, "[i]f there is a reasonable ground for contesting a claim, there is no bad faith in the denial of it." Crossley v. State Farm Mut. Auto. Ins. Co., 307 S.C. 354, 359-60, 415 S.E.2d 393, 396-97 (1992). Further, an insured may recover damages for bad faith if he or she proves "there

was no reasonable basis to support the insurer's decision to deny benefits" under an insurance contract. Dowling v. Home Buyers Warranty Corp., 303 S.C. 295, 400 S.E.2d 143 (1991). In this regard, the South Carolina Supreme Court has ruled that an insurance company should be able to litigate novel issues without fear of being accused of acting in bad faith. *See* Nelson v. United Fire Ins. Co., 275 S.C. 92, 267 S.E.2d 604 (1980); Myers v. Gov't Employees Ins. Co., 279 S.C. 70, 302 S.E.2d 331 (1983); *See also* Smothers v. U.S. Fid. & Guar. Co., 322 S.C. 207, 470 S.E.2d 858 (Ct. App.1996).

Additionally, "the benefits due an insured are not limited solely by those expressly set out in the contract." Tadlock Painting Co., 473 S.E.2d at 55. "[T]he covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." Mixson, Inc. v. American Loyalty Ins. Co., 349 S.C. 394, 562 S.E.2d 659 (Ct. App. 2002) (citing Tadlock Painting Co., 473 S.E.2d at 52). "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." Tadlock Painting Co., 473 S.E.2d at 53 (quoting Nichols, 306 S.E.2d at 619). Breach of an express contractual provision is not a prerequisite to bringing a bad faith cause of action. Tadlock Painting Co., 473 S.E.2d at 54.

The elements of an action for breach of the covenants of good faith and fair dealing in an insurance contract under South Carolina law are: (i) the existence of a mutually binding contract of insurance between plaintiff and defendant; (ii) a refusal by an insurer to pay benefits due under the contract; (iii) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing in the contract; and (iv) that causes damage to the insured. Myrick v. Prime Insurance Syndicate, Inc. 395 F.3d 485, 494 (4th Cir. 2005) (citing Cock-N-Bull

Steak House, Inc. v. Generali Ins. Co., 321 S.C. 1, 466 S.E.2d 727, 730 (1996)). If the insured proves the insurer's conduct was willful or in reckless disregard of his rights under the contract, the insured also may recover punitive damages, but if there is a reasonable ground for contesting a claim, there is no bad faith. Id.(citing Crossley v. State Farm Automobile Ins. Co., 307 S.C. 354, 415 S.E.2d 393, 397 (1992)).

In the present case, the parties do not dispute that there was an insurance contract in effect between the parties and that Permanent initially refused to pay the initial claim. Assuming plaintiff has sufficiently pled and can prove damages, the central issue in evaluating the summary judgment motion is whether Permanent possessed " a reasonable ground for contesting the claim." As noted above, and as recently reiterated by the Fourth Circuit Court of Appeals, "[i]f there is a reasonable ground for contesting a claim, there is no bad faith." Myrick v. Prime Insurance Syndicate, Inc., 395 F.3d 485, 494 (4th Cir. 2005) (citing Crossley, 415 S.E.2d at 397).

As the undisputed record reflects, Permanent denied Mrs. Suggs claim based upon the hospital and emergency services records which indicated that Mrs. Suggs had sustained her injuries as a result of her "tripping" and "falling" at home. No mention was made in any of the medical records that Mrs. Suggs had been struck by her husband's automobile. To the contrary, the medical records clearly and unambiguously provided that Mrs. Suggs had been injured when she "tripped" and "fell" at her home. As noted above, emergency physician records obtained from Marion County Medical Center indicate that Mrs. Suggs was "found at home lying supine on the floor" and that she had stated that she "tripped" and "fell." Dr. E. H. Heimberger further noted that:

> [Mrs. Suggs] is a 70 year old female well known to myself, patient of Dr. Mathi, who presented status post fall with complaint of pain in her right hip.

Similarly, Dr. H. Thourani noted that:

> [Mrs. Suggs] comes in complaining of fall and fracture...

Again, it is undisputed that Permanent would have no liability for Mrs. Suggs' injuries but for the involvement of the automobile driven by her husband, the plaintiff in this action.

As well, a recorded statement taken from Ms. McMakin, a purported witness to the accident involving the plaintiff's automobile, revealed that although she had seen Mrs. Suggs fall to the ground, she did not know how she fell. The plaintiff does not dispute the authenticity of the medical records and that the defendant insurer based its decision to initially deny Mrs. Suggs' claim based upon the representations found within those records. Instead, the plaintiff argues that the insurer's decision to not pay his wife's claim, in what he considered to be a timely fashion, was unreasonable. After careful consideration of the memoranda, relevant case law, and argument of legal counsel, the undersigned is not persuaded in this regard.

Based upon the undersigned's review of the undisputed evidence of record, including the medical and emergency service records of Mrs. Suggs, the undersigned concludes that Permanent possessed an objectively reasonable basis for initially denying the insurance claim of Mrs. Suggs. The plaintiff has not shown there was "no reasonable basis" for the defendant's decision to deny the initial claim. No genuine issue of material fact exists in this regard. This Court notes it is entirely possible that the injury to Mrs. Suggs occurred as she and her husband allege. However, the standard in this analysis is whether there was an objectively reasonable basis for denial of the initial claim. In South Carolina, an insurer is not be liable for bad faith refusal to pay proceeds under an insurance contract if there exists an objectively reasonable basis for denying an insurance claim. State Farm Fire and Casualty Co. v. Barton, 897 F.2d 729 (1990). Thus, summary judgment in favor of

Permanent is appropriate on plaintiff's claim of alleged "bad faith."

Further, the plaintiff does not dispute that the basis of the defendant's initial denial was the conflicting evidence contained within the medical evidence of record. Permanent denied Mrs. Suggs' claim because the medical and emergency services records explicitly indicated that her injuries had occurred as a result of her tripping and falling at home, not an automobile accident as alleged. Again, no genuine issue of material fact exists in regard to the basis for Permanent's refusal to pay the initial claim.

Because the Court concludes as a matter of law that an objectively reasonable ground existed upon which defendant Permanent initially denied Mrs. Suggs' insurance claim, there can be no claim for bad faith. Thus, summary judgment in favor of Permanent is appropriate on the plaintiff's claims of bad faith. In reaching this conclusion, this Court is duly cognizant of and carefully considered the reasoning of the Fourth Circuit Court of Appeals' recent decision in Myrick v. Prime Insurance Syndicate, Inc. 395 F.3d 485, 494 (4th Cir. 2005) (citing Crossley, 415 S.E.2d at 397) (holding that "if there is a reasonable ground for contesting a claim, there is no bad faith").

In Myrick, an insured owner of logging equipment brought a state-court action against its insurer after the denial of a claim for fire loss to logging machinery known as a fellerbuncher, asserting claims for breach of contract and bad faith. The insurer removed this action to federal court on the basis of diversity between the parties. The case proceeded to trial and the plaintiff obtained a verdict on the bad faith claim. The District Court Judge entered judgment on the jury verdict for the insured and the insurer appealed. On appeal, the Court of Appeals held, in part, that the insurer could not be liable for bad faith, since the equipment not being listed in the insurance policy provided a reasonable ground for denial of coverage. The Fourth Circuit Court of Appeals then

reversed the District Judge in this regard. In so holding, the Fourth Circuit Court of Appeals explained that:

> Under South Carolina law, an insured may assert against his insurance company a cause of action for the breach of implied covenants of good faith and fair dealing. *See* Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336, 306 S.E.2d 616, 619 (1983). This obligation includes a good faith duty to investigate the claim. *See* Flynn v. Nationwide Mutual Ins. Co., 281 S.C. 391, 315 S.E.2d 817, 820 (1984). The elements of an action for breach of the covenants of good faith and fair dealing in an insurance contract under South Carolina law are: 1) the existence of a mutually binding contract of insurance between plaintiff and defendant; 2) a refusal by an insurer to pay benefits due under the contract; 3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing in the contract; 4) that causes damage to the insured. *See* Cock-N-Bull Steak House, Inc. v. Generali Ins. Co., 321 S.C. 1, 466 S.E.2d 727, 730 (1996) (enumerating the elements of a claim for bad faith refusal to pay benefits under an insurance contract). If the insured proves the insurer's conduct was willful or in reckless disregard of his rights under the contract, the insured also may recover punitive damages, but if there is a reasonable ground for contesting a claim, there is no bad faith. *See* Crossley v. State Farm Automobile Ins. Co., 307 S.C. 354, 415 S.E.2d 393, 397 (1992).
>
> Prime has admitted that there was an insurance contract in effect in this case, [footnote omitted] and Prime did refuse to pay under it. The question we address here is whether under South Carolina law, there was cause to send the issue of Prime's bad faith to the jury. The Supreme Court of South Carolina has held that "[i]f there is a reasonable ground for contesting a claim, there is no bad faith." Crossley, 415 S.E.2d at 397. We are of opinion and hold that existence of the scheduled policy in which the destroyed fellerbuncher was not listed provided a reasonable ground to Prime to deny the claim. Therefore, we should reverse the district court's refusal to grant judgment as a matter of law on this claim unless Prime violated a duty to investigate this claim. *See* Flynn, 315 S.E.2d at 820.

This Court finds the reasoning of the Fourth Circuit in Myrick persuasive and is required to follow the standards set forth therein.

Furthermore, plaintiff's reliance upon both Nichols and Tadlock Painting Co. is not compelling, since these cases are factually distinguishable from the instant case. In Nichols v. State Farm Mut. Ins. Co., *supra,* apparently for the first time, the South Carolina Supreme Court

recognized the existence of a cause of action against an insurance company for bad faith refusal to pay first party benefits due under an insurance contract. A cause of action for bad faith refusal to pay benefits under a contract of insurance clearly now exists under South Carolina law. In the Nichols case, the insurance company refused and failed to timely pay a sufficient amount on the claim filed by the insured for substantial damage done to his stolen automobile.

In this case, Permanent did not refuse to pay first party benefits to the plaintiff. Instead, Permanent initially denied a (third party) claim made by the plaintiff's wife against him, following its initial investigation. The plaintiff in this case did not submit a claim against his insurance company for damages. Rather, the claim for benefits submitted to Permanent was by the plaintiff's wife. Permanent adequately defended the plaintiff under the parties' insurance contract and ultimately tendered the full policy limits to Mrs. Suggs in exchange for a release of liability. This release insured that the plaintiff would not be subject to any excess judgment obtained against him by his wife. In essence, Permanent provided to the plaintiff all benefits under the policy, including: (i) investigation of the claim; (ii) a defense; (iii) payment of full policy benefits to the injured party, his wife; and (iv) a release from further liability. Thus, Permanent provided the plaintiff virtually all it was legally obligated to provide to him under the policy.

Moreover, in Tadlock Painting Co v. Maryland Casualty Co., *supra,* the South Carolina Supreme Court further recognized that an insured may assert a cause of action for breach of the implied covenant of good faith and fair dealing against an insurer for consequential damages allegedly suffered because of insurer's bad faith handling of third party claims. In that case, the insurer refused to process claims filed against its insured which resulted in the insured personally settling each of the claims through its own efforts. The refusal by the insurer to process the claims

against its insured was the basis upon which the insured was allowed to proceed on its bad faith claim. The insured failed to get the benefit of the implied covenant of good faith and fair dealing inherent in the parties insurance contract, since the insurer had no reasonable basis for refusing to process claims against its insured. These facts differ from the case at bar.

In particular, the insurer in this case did not refuse to process Mrs. Suggs claims. Although Permanent initially denied Mrs. Suggs' claim based upon the results of its initial investigation, it ultimately tendered the full policy limits to Mrs. Suggs in exchange for a release of liability for Mr. Suggs. As a result, the plaintiff did not end up personally settling or paying the claim of his wife. Consequently, the instant case is factually distinguishable from Tadlock Painting Co.

Additionally, although not legally controlling, several cases from other jurisdictions are persuasive in support of the ultimate conclusions reached in this case. Specifically, in Allstate Ins. Co. v. Campbell, 334 Md. 381, 639 A.2d 652 (Ct. App. 1994), the Maryland Court of Appeals refused to recognize a cause of action against an insurer for a failure, in bad faith, to settle a claim where the entry of a judgment against an insured in excess of the policy limits had not yet accrued. In so holding, the Court of Appeals explained that:

> We decline to extend a cause of action for bad faith failure of the insurer to settle a claim within policy limits to a failure to settle initially which is followed by a settlement by the insurer and full release of the insured. In our view, it is unreasonable to allow an insured, dissatisfied with the progress of settlement negotiations, to retain counsel either to monitor or attempt to take over the defense, and then require the insurer to reimburse the insured for the cost of that counsel. Therefore, a cause of action against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits.

Allstate Ins. Co., 334 Md. at 397-398.

Such reasoning, although not legally controlling, is persuasive and supports this Court's conclusion that summary judgment is appropriate on plaintiff's claims of bad faith. In this case, no excess judgment against the plaintiff has occurred, since Mrs. Suggs' claims were ultimately settled for the policy limits.

Similarly, in <u>Amoco Oil Co. v. Reliance Ins. Co.</u>, 1998 WL 187336 (W.D. Mo. Apr. 14, 1998), the United States District Court for the Western District of Missouri also concluded that a cause of action does not arise against an insurer for a failure, in bad faith, to settle a claim where the entry of a judgment against an insured in excess of the policy limits had not yet accrued. As reasoned by the District Court:

> ...[C]ourts in other jurisdictions squarely faced with a "bad faith" failure to settle claim in which a judgment was entered or a settlement reached for an amount less than the policy limits have repeatedly held that an excess judgment or settlement is a prerequisite to the action...(citations omitted).
>
> The court believes the Missouri Supreme Court would follow the great weight of authority and adopt this view if squarely presented with the issue...
>
> <u>Amoco Oil Co.</u>, 1998 WL 187336 at 1-2.

Again, such reasoning, although not legally controlling, has persuasive effect in support of the ultimate conclusion reached in this case. However, such reasoning may also not be relevant should an insurer have no reasonable basis for denying a claim.

Having concluded that defendant Permanent had a reasonable basis upon which it initially denied Mrs. Suggs' claim, the undersigned also concludes that summary judgment in favor of Permanent is appropriate on the plaintiff's remaining claims for breach of contract, unreasonable

failure to pay a claim, and unfair claims practices.[2] Each of these remaining claims are premised upon the assumption that the defendant's conduct in processing Mrs. Suggs claim for benefits was unreasonable. Absent a showing that Permanent did not have a reasonable basis upon which to initially deny Mrs. Suggs' claim, the plaintiff's remaining claims for breach of contract, unreasonable failure to pay a claim, and unfair claims practices are subject to summary dismissal. Therefore, Permanent's motion for summary judgment is also granted as it relates to these remaining claims.

## Conclusion

For the reasons set forth herein, it is **ORDERED** that defendant Permanent General Assurance Corporation's motion for summary judgment is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

s/ Terry L. Wooten
Terry L. Wooten
United States District Court Judge

August 1, 2005
Florence, South Carolina

---

[2] Alternatively, the plaintiff's claims brought pursuant to the South Carolina Improper Claim Practices Act ("ICPA"), S.C. Code 38-59-20 et al., are also subject to summary dismissal, since the ICPA "does not create a statutory private cause of action for first-party claimants." Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co., 241 F. Supp. 2d 572 (D.S.C. 2002). At the hearing held in this matter, the plaintiff did not dispute this conclusion and/or offer controlling case law to the contrary.

15